UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, Plaintiff–Appellee,

v.

Loris C. BRIDGES, Defendant–Appellant.

No. 89–4200.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1990.

---

Richard F. Scruggs, Samuel M. Millette, Jr., Pascagoula, Miss., for defendant-appellant.

Pshon Barrett, Asst. U.S. Atty., Jackson, Miss., George Phillips, U.S. Atty., Biloxi, Miss., for plaintiff-appellee.

Before REAVLEY and KING, Circuit Judges, and LAKE, District Judge.[*]

PER CURIAM:

Defendant-appellant Loris C. Bridges defaulted on two loans from the Small Business Administration. Plaintiff-appellee the United States, on behalf of the Small Business Administration, filed suit in federal district court to collect the balance owing under the two promissory notes. Ms. Bridges asserted in defense that her debts to the Small Business Administration had been discharged in a prior bankruptcy proceeding. The district court granted the government's motion for summary judgment, finding that Ms. Bridges had not scheduled the debts that she owed to the Small Business Administration, and that the proper government agency did not receive notice or have actual knowledge of her personal filing of bankruptcy. Ms. Bridges appeals the summary judgment, contending that facts known to personnel in one branch office of the Small Business Administration constituted "notice or actual knowledge" of her personal bankruptcy proceeding. She thus maintains that her bankruptcy discharge on these two unscheduled debts is allowed under section 523(a)(3)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(3)(A). We affirm the final judgment of the district court.

I.

Plaintiff-appellee the Small Business Administration (SBA), a United States agency, is the holder and payee of two promissory notes executed in October 1979 by defendant-appellant Loris C. Bridges (Bridges).

---

[*] District Judge of the Southern District of Texas, sitting by designation.

One note bears a principal amount of $135,400; the second bears a principal amount of $180,800. These two notes represent loans made by the SBA to Bridges to finance her business enterprise, a shopping center known as "the Quarter," located in Jackson, Mississippi. Both notes were executed by Bridges in Jackson and were maintained by the Jackson district office of the SBA.

In 1981, Bridges sold her interest in the Quarter. Both the Contract for Sale and the General Warranty Deed specify that the buyer did not assume Bridges' indebtedness on the Quarter notes. The purchaser made regular installment payments to the SBA on both notes until May 1984.

After selling the Quarter, Bridges purchased all the shares in Gulf Hills Development Corporation (Gulf Hills), a resort located near Ocean Springs, Mississippi. The Gulf Hills venture quickly floundered, and on July 2, 1982, the corporation filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi, seeking reorganization under Chapter 11 of the Bankruptcy Code. At the time Bridges acquired the stock of Gulf Hills, the corporation was guarantor on an SBA loan—unrelated to Bridges' two loans—that was made and serviced by the SBA's branch office in Biloxi (subsequently relocated to Gulfport), Mississippi.[1] The SBA was scheduled as a creditor by Gulf Hills and the Biloxi office received timely notice of the corporation's bankruptcy filing.

On September 7, 1982, in the same bankruptcy court, Bridges filed a separate petition for Chapter 11 bankruptcy in her individual capacity. Although her two SBA loans were still outstanding, Bridges did not schedule these debts or list the SBA as a creditor.

In November 1982, Gulf Hills and Bridges filed a joint plan of reorganization. In December 1982, the bankruptcy court issued an Order Approving Disclosure Statement, which was styled—as were several subsequent court documents—with the individual names and case numbers of both Gulf Hills and Bridges. Because Gulf Hills listed the SBA as a scheduled creditor in its corporate bankruptcy, Phil R. Dunnaway (Dunnaway), the local "in-house" counsel for the SBA's branch office in Biloxi, received copies of these bankruptcy court notices. Dunnaway had been handling the Gulf Hills bankruptcy for the SBA's Biloxi office since the filing of the petition in July 1982. In an affidavit filed with the government's motion for summary judgment, Dunnaway stated that he was not aware that Bridges was personally obligated to the SBA. The Jackson SBA office, which was responsible for servicing Bridges' two promissory notes, did not receive notice of Bridges' bankruptcy case prior to her discharge in April 1983.

The purchaser of the Quarter, Bridges' prior business, ceased making installment payments on Bridges' two promissory notes in May 1984. The SBA filed suit against Bridges in federal district court on March 16, 1988, seeking to recover the principal and interest due on the notes. After producing the two notes and establishing a default in payments under the terms of each note, the SBA moved for summary judgment. Bridges filed a cross-motion for summary judgment, arguing that pursuant to section 523(a)(3)(A) of the Bankruptcy Code, these unscheduled debts to the SBA had been discharged in her personal bankruptcy proceeding. The district court granted the government's motion for summary judgment and denied Bridges' cross-motion.

The sole issue on appeal is whether Bridges' debts to the SBA, a government agency that Bridges failed to schedule as a creditor in her personal bankruptcy proceeding, were nevertheless discharged because the SBA acquired "notice or actual knowledge" of her bankruptcy, as envi-

1. There are two SBA offices in Mississippi: a district office located in Jackson, and a branch office formerly located in Biloxi, moved in 1985 to its present location in Gulfport. The Jackson office administers loans for all the state except for an eleven-county area in south Mississippi, which is handled by the Gulfport office. In his deposition, Dunnaway testified that the Gulfport office is autonomous from the Jackson office.

sioned by section 523(a)(3)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(3)(A). We conclude that, under the particular facts of this case, Bridges has not established that the SBA received such notice or actual knowledge; therefore, the district court correctly held that Bridges was not discharged on the two SBA promissory notes.

## II.

■ A district court properly grants summary judgment if it appears from pleadings, depositions, admissions, and affidavits, considered in a light most favorable to the nonmovant, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985). The material facts in this case are undisputed. We review the district court's conclusions of law de novo.

Bridges admits that she did not schedule her loans from the SBA in her bankruptcy case. Under section 523(a)(3)(A) of the Bankruptcy Code:

> A discharge ... does not discharge an individual debtor from any debt ... neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit ... timely filing of a proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing.*

11 U.S.C. § 523(a)(3)(A) (emphasis added). We have held that a debtor must not take lightly her obligation to schedule all her creditors, for "a court will not read the actual notice exception to the scheduling requirement so broadly that the rights of unlisted creditors are compromised." *Moureau v. Leaseamatic, Inc.*, 542 F.2d 251, 253 (5th Cir.1976).

The burden of proof rests with Bridges to show that the SBA had "notice or actual knowledge" under section 523(a)(3). *Hill v. Smith*, 260 U.S. 592, 594–95, 43 S.Ct. 219, 219–20, 67 L.Ed. 419 (1923). Discussing the Bankruptcy Act's predecessor to section 523(a)(3), the Court in *Hill* explained: "[J]ustice and the purpose of the section justify the technical rule that if the debtor would avoid the effect of his omission of a creditor's name from his schedules he must prove the facts upon which he relies."

The government concedes that by December 1982 or January 1983—prior to the closing of Bridges' bankruptcy case—counsel Dunnaway in the SBA's Biloxi office was aware that Bridges had filed a bankruptcy petition. Bridges did not present summary judgment evidence to show that any other office or branch of the SBA received knowledge of Bridges' bankruptcy case. The SBA submitted an affidavit of Samuel M. Butchee, the Loan Specialist in the SBA's district office in Jackson who handled Bridges' two loan files. Mr. Butchee stated that he had searched the files on these two loans and had found no indication that the SBA received notice of Bridges' bankruptcy prior to her discharge. Hence, we must decide whether the personal knowledge of personnel in a branch SBA office—a branch unconnected and unfamiliar with Bridges' indebtedness to the SBA—should be imputed to the SBA under the circumstances presented in this case.

We first emphasize that we are here dealing with a large and necessarily cumbersome government agency composed of various offices throughout the United States. The treatment generally of government agencies, including adequate notice to such agencies, is often subject to special statutory provisions and procedures. *See, e.g.,* Bankr.Rules 2002(j), 7004(b), 7012(a); Fed.R.Civ.P. 4(d)(4), 4(d)(5), 12(a). Recognizing the potential problems when an extensive, bureaucratic agency is involved as a creditor in a bankruptcy proceeding, a debtor should give special attention to insure timely and meaningful notice to the correct agency.

Addressing first whether the SBA received adequate notice, as contemplated by the Bankruptcy Code and as mandated by due process concerns, we note that whether notice to an agency is adequate depends upon the facts and circumstances of a given case. After reviewing the summary

judgment facts, we cannot agree with Bridges' contention that the SBA "received at least the same legal notices of Mrs. Bridges' bankruptcy that it would have received had it been scheduled separately in her individual case."

A notice from the bankruptcy court of an individual debtor's bankruptcy filing alerts a creditor that it has been scheduled in that individual's bankruptcy case. The SBA received no notices at all regarding Bridges' personal bankruptcy, since Bridges failed to schedule it as a creditor. Instead, an attorney in a branch office unconnected with the loans made to Bridges discovered Bridges' name and bankruptcy case number in the caption of documents relating to a joint plan of reorganization filed in an ongoing bankruptcy proceeding of the SBA's known debtor, Gulf Hills. It appears that the SBA's Biloxi office, and counsel Dunnaway in particular, reasonably assumed that these notices were merely additional documents in the continuing Gulf Hills bankruptcy. The "notice" to which Bridges refers could only have informed the Biloxi office that it was *not* scheduled as a creditor, since it had received no prior notices in Bridges' individual bankruptcy case, and had not been apprised that Bridges had two loans outstanding in the Jackson district office. Such misinformation cannot satisfy the notice requirements envisioned by the Bankruptcy Code or by the fourteenth amendment's due process clause. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950) (due process requires that notice be reasonably calculated, under all the circumstances, to convey all information necessary to apprise interested parties that their rights are before the courts).

■ Bridges also argues that notice was sufficient because the Assistant United States Attorney responsible for handling the Gulf Hills bankruptcy for the government received correspondence and court documents, in connection with the Gulf Hills/Bridges joint plan of reorganization, containing the case number of Bridges' individual bankruptcy case. The record indi-

cates, however, that the government's attorney was at least as unenlightened as to Bridges' true state of affairs as was the Biloxi office. In any event, notice or knowledge of an Assistant United States Attorney cannot, as a general proposition, be imputed to the particular agency to which a debt is owing. *United States v. Omer*, 232 F.Supp. 746, 748 (D.Kan.1964); *United States v. Golenburg*, 175 F.Supp. 415, 418 (N.D.Ohio 1959).

■ We next inquire whether the SBA possessed "actual knowledge" of Bridges' bankruptcy in time to protect its rights. In *Venson v. Housing Authority of Atlanta*, 337 F.2d 616, 617 (5th Cir.1964), we approved a district court's opinion which held that "knowledge" of a government agency within the intent of section 35(a)(3) of the Bankruptcy Act, the predecessor to section 523(a)(3) of the Bankruptcy Code, must be actually existent and not merely constructive or imputed. *In re Venson*, 234 F.Supp. 271, 273 (N.D.Ga.1964) (reading by a member of the Atlanta Housing Authority staff in the *Fulton County Daily Reporter* that a bankruptcy petition had been filed by a William Venson, without any listing of claims of creditors, is insufficient to constitute actual knowledge required under the Act). In addition, notice or actual knowledge of one United States government agency will not be imputed to another agency. *See In re H. & C. Table Co.*, 457 F.Supp. 858, 860 (W.D.Tenn.1978) (The United States is a "monstrous government" and one agency will not always know what another agency is doing; when the appropriate representative of the government is not notified, the rights of the United States may be jeopardized.); *United States v. Yale Transport Corp.*, 184 F.Supp. 42, 47 (S.D.N.Y.1960) ("[N]otice of bankruptcy proceedings should be reasonably calculated to come to the attention of that branch of the Government familiar with the claims involved and which exercises functions with respect thereto."); *Golenburg*, 175 F.Supp. at 418 (Imputing notice or knowledge from one government agency to another is obviously unreasonable.).

One case has held that the notice or actual knowledge of one portion of an agency cannot be imputed to another portion of the same agency. *U.S. Metal Products Co. v. United States*, 302 F.Supp. 1263, 1270 (E.D.N.Y.1969). The court in *U.S. Metal Products* based its conclusion on the fact that the government contracts at issue specified that all correspondence should be directed to the Defense Contract Administration Services Region, New York. Therefore, knowledge of the debtor's bankruptcy proceedings—in which the debtor failed to schedule the government as a creditor or as a party to an executory contract—by the office that awarded the government contracts, Defense Electronics Supply Center, Ohio, could not be imputed to the New York office charged with administering the contracts.[2]

The rationale of these cases relating to the "actual knowledge" of a government agency is that the government must have a meaningful opportunity to protect its rights in a bankruptcy proceeding. When a debtor is at fault by failing to comply with the Bankruptcy Code's requirements to properly list creditors and schedule debts, the United States government should not, and as a practical matter cannot, be charged with knowledge of the implications contained in each piece of paper—among the stream of documents entering its various offices each day—unless the agency particularly responsible for and familiar with the claims against the debtor has notice or actual knowledge of the debtor's bankruptcy case.[3] Even within an individual agency, given the formidable infrastructure of many of these government entities, automatic imputation of notice or actual knowledge from one branch office to another is seldom a viable concept. A court should look to the facts in each case to determine whether the information received by a given branch is of such a nature as to put the agency on fair notice of the need to act with reasonable diligence to protect its claim.

In the instant case, although the district court found that the attorney in the SBA's Biloxi office was aware that Bridges had a pending bankruptcy case, the court concluded that the SBA in its capacity as a creditor of Bridges, rather than in its capacity as a creditor of Gulf Hills, did not have notice or actual knowledge under sec-

2. *See also In re Senall*, 64 B.R. 325, 327 (Bankr. M.D.Fla.1986). In *In re Senall*, the bankruptcy court held that Bank of America National Trust and Savings Association, as trustee of a profit-sharing plan, was entitled along with other plaintiffs to evoke section 523(a)(3), and have its claim excepted from discharge, so that the bank could proceed against the debtor in a California lawsuit. *Id.* at 328. The debtor contended that Bank of America had actual knowledge of his bankruptcy case because the loan adjustment center of the bank's Pasadena, California branch was scheduled as a creditor and noticed of the bankruptcy regarding an unrelated loan to the debtor for the purchase of an airplane. The court found that, as a matter of law, this notice was insufficient to notify the branch in Los Angeles of the pendency of the Chapter 11 case. The court reasoned:

> The notice of bankruptcy ... received by the Pasadena branch did not in any way indicate that any claim other than the deficiency judgment owed the Pasadena branch was involved, and the Bank quite reasonably assumed that the notice related to that deficiency claim and had no reason to refer the notice out to its other branches. The Debtor never sought to notice the Bank of America in Los Angeles in its capacity as trustee, and the Debtor cannot preclude a challenge to dis-

chargeability because of his own failure to notify and schedule his creditors.

*Id.* at 327. In the case at hand, we are dealing with different branches of a government agency; therefore, we need express no view as to what result might obtain in a corporate setting.

3. The size and complexity of government agencies explains in part the need for Bankr.Rule 2002(j), which provides:

> **Notices to the United States.** Copies of notices required to be mailed to all creditors under this rule shall be mailed ... (4) if the papers in the case disclose a debt to the United States other than for taxes, to the United States attorney for the district in which the case is pending and to the department, agency, or instrumentality of the United States through which the debtor became indebted....

The advisory committee notes for Rule 2002(j) indicate that copies of notices should be sent to the head of a governmental agency, who in this case would be the SBA Administrator. Under the facts before us, of course, the bankruptcy court would not have noticed the Administrator regarding Bridges' case, because her court filings did not "disclose a debt to the United States [SBA]."

**114**

tion 523(a)(3)(A). We agree. The Biloxi office of the SBA had no reason to suspect that Bridges was personally indebted to the SBA, and the record indicates that the Jackson office did not have notice or actual knowledge of Bridges' bankruptcy. Thus, the branch of the SBA with knowledge of Bridges' bankruptcy case was not the branch for whom the information would have had any meaning. Under these circumstances, we can only conclude that the SBA did not receive the type of notice or actual knowledge of Bridges' bankruptcy that would excuse her failure to schedule her two sizeable debts to this government agency.

### III.

Based on the foregoing reasons, we hold that Bridges' two debts to the SBA have not been discharged in her bankruptcy proceeding. Therefore, the judgment of the district court, granting summary judgment to the United States, is AFFIRMED.