In re Glenn A. MAIN, III and
Darla A. Main, Debtors.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
Plaintiff/Appellee,

v.

Glenn A. MAIN, III,
Defendant/Appellant.

Civ.A. No. 92–360.
Bankruptcy No. 88–2008.
Adv. No. 89–388.

United States District Court.
W.D. Pennsylvania.

Sept. 16, 1992.

Lawrence G. Paladin, Jr., D'Ippolito & Paladin, Pittsburgh, PA, for plaintiff.

Donald R. Calaiaro, Calaiaro & Corbett, P.C., Pittsburgh, PA, for defendant.

## OPINION

DIAMOND, Chief Judge.

### I.

Defendant Glenn A. Main III ("appellant" or "debtor" or "Main") has appealed to this court from the December 2, 1991, order of the Honorable Bernard Markovitz of the United States Bankruptcy Court for the Western District of Pennsylvania, which held that the debt owed by appellant to National Union Fire Insurance Company of Pittsburgh ("National Union") is nondischargeable pursuant to § 523(a)(2)(B) of the United States Bankruptcy Code, 11 U.S.C.A. § 523(a)(2)(B) (West 1992). *See In re Main*, 133 B.R. 746 (Bankr.W.D.Pa. 1991). The bankruptcy court, *inter alia*, found that appellant—a certified public accountant—submitted a materially false financial statement to National Union for the purpose of having National Union issue a bond thereby guaranteeing one of Main's debts. *In re Main*, 133 B.R. at 753. Main's submissions to National Union failed to document actual and contingent liabilities which were known by appellant to be in excess of $2,600,000.00. Main does not contest the bankruptcy court finding that he filed with National Union materially false written statements. Rather, appellant contests the bankruptcy court's March 23, 1990, ruling which denied the motion to dismiss National Union's complaint objecting to the dischargeability of its debt. National Union maintains that it did not receive notice of the bankruptcy petition until after the bar date set by order of the bankruptcy court. *In re Main*, 111 B.R. 535, 536 (Bankr.W.D.Pa.1990). A review of the transcripts and the parties' briefs leads the court to conclude that the bankruptcy court's December 2, 1991, order should be affirmed.

### II.

On July 29, 1988, debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766 (1992). On August 4, 1988, the bankruptcy court entered an order setting November 7, 1988, as the bar date for the filing of objections to the dischargeability of debt. The bankruptcy court found that notice of the debtor's bankruptcy petition "was sent in a timely manner by the bankruptcy court clerk to National Union" at the following address:

National Union Fire Ins. Co.
70 Pine Street
New York, NY

*In re Main*, 111 B.R. at 537.

The November 7, 1988, deadline passed without National Union filing a complaint or seeking an extension of time in which to file a complaint. Indeed, National Union did not file a motion for an extension of the bar date until May 15, 1989. *Id.* The bankruptcy court entered an order on June 13, 1989, which granted National Union until June 30, 1989, to object to the dischargeability and to the discharge of its debt. *Id.* Debtor appealed the June 13, 1989, order to the United States District Court for the Western District of Pennsylvania and while the appeal was pending, the bankruptcy court issued an order extending National Union's time to file a complaint until thirty days after the resolution of the appeal by the district court. On October 17, 1989, the debtors' appeal was quashed as interlocutory. Consequently, on November 16, 1989, and pursuant to 11 U.S.C. §§ 727(b) and 523(a)(2)(B), National Union filed a complaint objecting to the discharge of over $150,000.00 owed to National Union. On December 29, 1989, Main filed a motion to dismiss on the basis that National Union's objection to discharge was untimely. The motion to dismiss was denied by the bankruptcy court on March 23, 1990. On November 18, 1991, a hearing/trial was held on National Union's complaint and on December 2, 1991, the bank-

ruptcy court issued a memorandum opinion holding that (1) National Union's claim was not time barred and (2) the debt was non-dischargeable as having been obtained with a materially false financial statement. *In re Main*, 133 B.R. 746 (Bankr.W.D.Pa. 1991).

When National Union agreed to issue a financial guarantee bond, guaranteeing Main's Note to Baywater Associates, it executed an indemnity agreement which governed Main's liability to National Union. Under paragraph 10(b) of the Indemnity Agreement, all notices to National Union relating to the indemnity agreement were to be sent to the following address:

National Union Fire Insurance Company of Pittsburgh, PA

70 Pine Street, 21st Floor

New York, NY 10270

Attention: Division Manager

Comprehensive Financial Risk Division

The bankruptcy court found that National Union's address, as listed in the matrix given to the clerk of the bankruptcy court by the debtor and as set forth *supra* at 787, did not conform to the address as set forth in paragraph 10(b) of the indemnity agreement. The bankruptcy court found that National Union is a large company, being a subsidiary of the American International Group ("AIG"), a company with over 30,000 employees. *In re Main*, 111 B.R. at 537. National Union and AIG share a mail room on the second floor of 70 Pine Street. *Id.* Although National Union was listed in the matrix of creditors, a comparison of the address set forth in the indemnity agreement with that set forth *supra* at 3, reveals that the matrix address did not include the necessary reference to the division manager, nor did it include a reference to the appropriate floor. Consequently, the bankruptcy court concluded:

It cannot be said with certainty that National Union ever received the notice which had been sent by the clerk of bankruptcy court. To the contrary, National Union has not been able to locate the notice in any of its files.

Even if National Union did received it (as it presumably did), the notice was *not* adequate to reasonably apprise it of the bankruptcy proceedings so as to afford it the opportunity to object in a timely manner to the discharge of Debtors and their debts.

*In re Main*, 111 B.R. at 538 (emphasis in original). As mentioned above, the bankruptcy court's conclusion was predicated upon a finding that because of its size and the vast range of its operations, National Union, upon receipt of the notice in its mail room, would not have been able to determine the person within the corporation to whom the notice should have been forwarded in order to determine what action, if any, should be taken with regard to the notice.

### III.

When a creditor has not received notice of a bankruptcy proceeding, 11 U.S.C. § 523(a)(3)(B) provides for an exception to discharge by exempting from discharge any debt not listed or scheduled in time to permit:

... timely request for a determination of dischargeability of such debt under one of such paragraphs [i.e., 11 U.S.C. § 523(a), (4) or (6)], unless such creditor had notice or actual notice of the case in time for such timely filing and request.

Thus, a creditor who had actual knowledge of a bankruptcy proceeding prior to the bar date may not file a late complaint even though it did not receive formal notice of the bar date. *See, e.g., In re Price*, 79 B.R. 888, 890–93 (Bankr.9th Cir.1987) (creditor was not entitled to an extension of the period in which to file an objection to discharge because creditor had actual notice of a bankruptcy proceeding and such notice is sufficient to place an unscheduled creditor on inquiry notice of the bar dates and such notice satisfies due process requirements), *aff'd*, 871 F.2d 97 (9th Cir.1989).

Bankruptcy Rule 4007(c) sets forth the time frame for filing a complaint under § 523(c) in Chapter 7 liquidation cases. Rule 4007(c) states:

A complaint to determine the dischargeability of any debt pursuant to section 523(c) of the code shall be filed not later than sixty days following the first date set for the meeting of creditors held pursuant to section 341(a). The court shall give all creditors not less than thirty days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Although the bankruptcy court did not resolve the specific factual issue as to whether National Union received the notice sent by the clerk of the bankruptcy court, the court did reach a more general factual conclusion by stating that "National Union did *not* have actual knowledge of debtors' bankruptcy petition prior to the bar date." *In re Main,* 111 B.R. at 538 (emphasis in original).

Main refers the court to a number of cases in which objections to claimed exemptions or discharges were disallowed because they failed to comply with the timing scheme set forth in the bankruptcy rules. For example, the debtor refers the court to *Taylor v. Freeland & Kronz,* 503 U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), in which the Supreme Court (in Justice Thomas's first opinion) held that a bankruptcy trustee could not contest the validity of an exemption claimed under 11 U.S.C. § 522(*l*) after the expiration of the thirty-day period set forth in Bankruptcy Rule 4003(b). In *Taylor,* the trustee had actual knowledge of the debtor's filing and yet he failed to seek a hearing on the issue of the debtor's basis for claiming an exemption. Nor did the trustee ask the bankruptcy court for an extension of time in which to object to the exemption. Under § 522(*l*), the trustee or any creditor may file objections to the list of property claimed as exempt within thirty days after the conclusion of the meeting of creditors, which must be held in accordance with Rule 2003(a). Bankruptcy Rule 4003(b) authorizes the bankruptcy court to extend the

time in which to file an objection to exemption. *Taylor* does not address the issue raised in the instant case, that is, what are the rights of a creditor who has missed the deadline set forth in Rule 4007(c) because the creditor had no notice of the bankruptcy proceeding. Rather, *Taylor* stands for the narrow proposition that a claimed exemption may not be invalidated even though the debtor lacked a good faith reason for seeking the exemption, once the thirty-day period set forth in Rule 4003(b) has expired and if the trustee had actual knowledge of the claimed exemption. *Taylor,* 503 U.S. at ——, 112 S.Ct. at 1648, 118 L.Ed. at 287. Thus, once the thirty-day period has passed, a creditor may not assail the debtor's basis, however incredible, for claiming the exemption. *Id.*

If the *Taylor* case is inapposite, so too, are the other cases cited by debtor, because they stand for the proposition that there is no excusable neglect exception to the time frame set forth in Rule 4007(c), if a creditor had actual notice of a bankruptcy proceeding. *See, e.g., In re Price,* 79 B.R. 888 (9th Cir. BAP 1987), *aff'd,* 871 F.2d 97 (9th Cir.1989); *Neeley v. Murchison,* 815 F.2d 345, 347 (5th Cir.1987). *See also In re Dewalt,* 107 B.R. 719, 721 (9th Cir. BAP 1989) (an unscheduled creditor with actual notice of the bankruptcy has the burden to inquire as to the bar date for filing a non-dischargeability complaint); *In re Schwartz & Meyers,* 64 B.R. 948 (Bankr. S.D.N.Y.1986) (the notice requirement is the necessary predicate for triggering the sixty-day period set forth in Rule 4007(c)); *In re Rhodes,* 61 B.R. 626, 630 (9th Cir. BAP 1986) (dismissing a complaint as untimely filed, where counsel received actual notice of the bankruptcy proceeding approximately one month from the dischargeability bar date). Cases such as *Neeley* turned on their own factual climates in that the creditors had actual notice of the bankruptcy proceedings and thus were in the position to protect their rights under § 523(c).

In the instant case, however, it has been established that creditor National Union had no such constructive or actual

notice of the debtor's bankruptcy filing, and it is well accepted that the rigid timing scheme spelled out in Rule 4007(c) is not triggered unless the objecting creditor had at least actual knowledge of the bankruptcy proceeding. *In re Hall,* 128 B.R. 175, 177–78 (Bankr.S.D.Tex.1990) (*citing In re Rhodes,* 61 B.R. 626, 630 (9th Cir. BAP 1986) and *In re Tosenberger,* 67 B.R. 256 (Bankr.N.D.Ohio 1986)). Indeed, the burden of proof rests with the debtor to demonstrate that creditors had "notice or actual knowledge" of the bankruptcy filing under § 523. *United States, Small Business Administration v. Bridges,* 894 F.2d 108, 111 (5th Cir.1990) (*citing Hill v. Smith,* 260 U.S. 592, 594–95, 43 S.Ct. 219, 219–20, 67 L.Ed. 419 (1923)). The bankruptcy judge found that Main·failed to carry the burden of proof on this point and this court finds no basis for upsetting this factual conclusion.

■■■ The bankruptcy court noted that the discharge provisions of the Bankruptcy Code must conform to Fifth Amendment due process principles, where the debtor has knowledge of a claim and the claimant is not aware of the pending proceedings. *In re Main,* 111 B.R. at 538 (*citing Broomall Indus. v. Data Design Logic Systems,* 786 F.2d 401, 403 (Fed.Cir.1986)). Thus, a creditor has the right to assume that proper, adequate and constitutional notice will be provided before its claim will be forever barred. *Reliable Elec. Co., Inc. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984). Consequently, if a proceeding is to be accorded finality, due process demands that "the required notice be . . . reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See also In re Eliscu,* 85 B.R. 480, 482 (Bankr.N.D.Ill.1988) (Fifth Amendment due process considerations take precedence over the discharge provisions of the Bankruptcy Code).

As mentioned above, the bankruptcy judge made the factual finding that due to the size of National Union:

it is reasonable to expect that National Union, upon receipt of the notice in its mailroom, would *not* have been able to determine the person within the corporation to whom a notice should have been forwarded in order to determine what action, if necessary, should be taken with regard to the notice. Under these circumstances, it must be concluded that National Union did *not* receive notice which was reasonably calculated to apprise it of Debtors' bankruptcy case so as to permit it to file its complaint in a timely manner. The notice received by National Union was not acted upon by it in a timely manner because it was unable to determine, in light of the manner in which it was addressed, what interest it had in the bankruptcy proceeding.

*In re Main,* 111 B.R. at 539 (emphasis in original).

The bankruptcy judge's conclusions that an inadequately addressed notice could not reasonably apprise a large and complex institution of its rights in a bankruptcy proceeding, is consistent with the holding in the *Bridges* case in which the Fifth Circuit, *inter alia,* noted that because the debtor was dealing "with a large and necessarily cumbersome government agency" a debtor should give "special attention to ensure timely and meaningful notice to the correct agency." *Bridges,* 894 F.2d at 111. The Fifth Circuit was sensitive to the fact that potential notice problems could arise when a large institution is involved as a creditor in a bankruptcy proceeding. *Id.* And the Fifth Circuit noted that "whether notice to an agency is adequate depends upon the facts and circumstances of a given case." *Id.*

■■■ The court emphasizes that its decision is not predicated upon the doctrine of excusable neglect, a doctrine which has been curtailed by the 1978 amendments to the bankruptcy rules. *See In re Barr,* 47 B.R. 334, 336 (Bankr.E.D.N.Y.1985) (the new rules do not leave room for the application of the excusable neglect doctrine).

The excusable neglect doctrine, of course, presupposed, that the creditor received timely and adequate notice of the proceedings. Indeed, a presumption of proper notice arises where the court file shows that the address on the certificate of mailing is a *correct* one. *In re Barnes*, 114 B.R. 579, 581 (Bankr.S.D.Ill.1990). Consequently, if a proper and correct address was not used by the debtor, no presumption arises that the mail was received by the creditor and this is the situation before the court. *See In re Bucknum*, 951 F.2d 204, 207 (9th Cir.1991) ("[m]ail that is *properly* addressed, stamped and deposited into the mails is presumed to be received by the addressee"). *In re American Properties, Inc.*, 30 B.R. 247, 251 (Bankr.D.Kan.1983). As the foregoing indicates, appellant has failed to demonstrate that National Union had actual notice of the bankruptcy filing and that the bankruptcy court therefore erred in granting National Union an extension of time in which to file a complaint. The bankruptcy court's December 2, 1991, order will be affirmed.