**In re Daniel G. KASAL, Debtor.**

**Ruth K. CASEY, Trustee, Plaintiff,**

v.

**Daniel G. KASAL, Defendant.**

**Marguerite F. KASAL, Plaintiff,**

v.

**Daniel KASAL, Defendant.**

Bankruptcy No. 96–30992DAS.
Adversary Nos. 97–0250DAS, 97–1060DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 21, 1997.

Michael H. Kaliner, Fairless Hills, PA, for Debtor.

Brian Cochran, Chadds Ford, PA, for Plaintiff.

Gloria Satriale, Chester Springs, PA, trustee.

Brendan Sherman, Philadelphia, PA, for Trustee.

William J. Litvin, West Chester, PA, for Marguerite F. Kasal in other matters.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The above-referenced proceedings arising out of the instant Chapter 7 bankruptcy case present interesting questions regarding the duties of a bankruptcy judge when receiving potentially meritorious, but poorly prosecuted, challenges to a Chapter 7 debtor's general bankruptcy discharge. We conclude that, in light of a debtor's presumptive right to a discharge, we can only consider claims asserted with some logic of finality and specificity by the established bar date, irrespective of the fact that the plaintiff's ineptness appears responsible for the lack of a better quality of claims. We also hold that a party who has not raised a timely challenge can take up the claims of a timely plaintiff if the latter declines to proceed, although the substituted plaintiff cannot expand the scope of the timely plaintiff's claims.

In the instant case, we find that a timely barebones complaint, invoking only 11 U.S.C. § 727(a)(4)(A), states the only claim which can be prosecuted against DANIEL G. KASAL ("the Debtor") at this time. Due to recent amendments to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7004(a), now incorporating Federal Rule of Civil Procedure ("F.R.Civ.P.") 4(m), we have discretion to direct that service of this complaint be made within a short additional specific extended time irrespective of the lack of good cause for delay in effecting service, and hereby exercise that discretion. We will allow either RUTH K. CASEY, TRUSTEE ("the Plaintiff"), or, if she fails to do so, the Debtor's estranged wife, MARGUERITE F. KASAL ("the Wife"), to prosecute the timely-asserted claims under 11 U.S.C. § 727(a)(4)(A) only. We refuse to consider the Wife's earlier correspondence to this court as the equivalent of an informal "complaint," and we will dismiss as untimely the Wife's belatedly-filed formal proceeding asserting different claims. We will, however, allow both the Plaintiff and the Wife to present evidence at trial in support of § 727(a)(4)(A) claims.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed the underlying individual voluntary Chapter 7 bankruptcy case on November 14, 1996. The Schedules originally filed indicated that the Debtor had property of some value, specifically a home valued at $350,000; household goods valued at $20,000; an interest in a life insurance policy valued at $8,000; and jewelry and "tools," valued at $1,000 and $1,500, respectively. However, numerous security interests against the home and the life insurance policies are noted, and all of the property is claimed as exempt under 11 U.S.C. § 522(b)(2), apparently because it is all allegedly owned by the Debtor by the entireties with the Wife. Schedule "I" reflects net monthly income of $1,784.50 from employment as a recruiter of employees for a bank. Schedule "J" recites net monthly expenses of $2,200, but $750 of this sum is devoted to health and life insurance payments and $300 is designated as support for dependents.

The Debtor has made three amendments to his Schedules. On January 3, 1997, he corrected the address of the Wife from his address to that of her present separate residence. After the meeting of creditors conducted by Gloria Satriale, Esquire ("the Trustee"), on February 6, 1997, he made two further amendments: (1) on February 12, 1997, adding four additional unsecured creditors; and (2) on February 13, 1997, amend-

ing his Schedules to reflect the following personal property and values:

| | |
|---|---|
| Household goods and furnishings | $ 8,000.00 |
| Antiques and artwork | 10,000.00 |
| Wearing apparel—clothing | 500.00 |
| Animals—horse | 500.00 |

On February 6, 1997, prior to receipt of the amendments, the Trustee submitted a no-asset report, indicating that she believed that the Debtor's estate contained no assets which could be administered for the benefit of cred-itors.

On March 13, 1997, this court received in chambers a lengthy letter, dated February 10, 1997, from the Wife ("the Letter"). The Letter begins by stating that the Wife failed to receive notice of the meeting of creditors, as should have been accomplished pursuant to Local Bankruptcy Rule 1009.1(b). It then goes on to relate numerous alleged physical threats by the Debtor to the Wife, resulting in protection from abuse orders; court bat-tles over their assets, including the Debtor's alleged wrongful exclusion of her from, and his misappropriation of the assets of, an em-ployment agency business in Wilmington, Delaware; removal and concealment of a jointly-owned antiques and art collection which she valued at no less than $200,000; concealment of assets of the employment business; and various transfers of motor ve-hicles among the Debtor and the parties' children, resulting in, *inter alia*, the Debtor's regular use of a 1996 Ford Thunderbird ti-tled to their son and his making a $600 monthly payment for a lease of a 1997 Acura Integra used by their daughter.

On March 14, 1997, we replied to the Let-ter by forwarding a copy of it to the Debtor's counsel, the Trustee, and the office of the United States Trustee ("the UST"), covered by a letter of our own, stating as follows:

> I note from the docket that the deadline for the filing of a complaint objecting to Mr. Kasal's discharge or dischargeability of any debts to you or [sic] otherwise dischargeable (please note that support and alimony can never be discharged) is April 7, 1997. I would advise that you retain counsel to decide whether such a filing is in your best interests, but if you choose to do so yourself, I advise you to appear in our Clerk's office, [address], well

before that date to apprise yourself of any necessary procedures and the form that such a filing must take.

> Since your claims could come before me for decision, it would be inappropriate for me to comment further....

The Wife responded, apparently in lieu of filing a complaint, with a letter of April 1, 1997, to the Clerk's office, stating as follows:

> I received your letter stating that it would be necessary for me to hire a lawyer to present my objections to my husband's bankruptcy in court. As you may recall, I stated in my letter that my husband has stolen and hidden every marital asset we acquired in 24 years of marriage so I am left at a disadvantage for justice to be done.

> I have indicated I have solid proof of my husband's fraud in claiming bankruptcy. It's a disappointment, to say the least, that justice will not be served or even consid-ered because of my inability to hire a lawyer. It's shocking to me that my hus-band is using the system to his advantage and the system is allowing itself to be used. Does it make no difference to this court that my husband is not bank-rupt...that he is concealing assets from you and his creditors? Are you telling me that anyone can come in and use the gov-ernment and there is no such thing as legality or justice unless you have the mon-ey to contest it? Don't you research a claim yourself?

> I've done all it's within my power to do with my limited resources. I have made you aware of this fraud and evidently no one cares....

As fate would have it, the Plaintiff, who apparently is, or is related to, the seller of the employment agency to the Debtor and the Wife, which they previously operated to-gether, filed Adversary No. 97–0250 ("the Casey Proceeding") on April 7, 1997, estab-lished as the last day for filing objections to the Debtor's discharge or the dischargeabili-ty of any of his indebtednesses. A model of brevity, the entire substance of the claims set forth in the Complaint is as follows:

4. Plaintiff is a creditor of defendant debtor in the above-captioned proceedings by virtue of having lent funds to debtor.

5. The debt of the defendant to plaintiff is not dischargeable pursuant to 11 U.S.C. Section 727(a)(4)(A)

WHEREFORE, plaintiff prays that the Court enter an Order declaring that the debts of Debtor, Daniel Kasal, to plaintiff is nondischargeable and further, that the Debtor is herewith denied a discharge and for such other relief as is just and proper.

A Summons was issued pursuant to this Complaint and the trial was scheduled on May 20, 1997. On the latter date, only the Debtor's counsel appeared, claiming lack of service, and the trial was continued to June 19, 1997. Since the docket verified the assertion that no service had been made, an Amended Summons was issued on May 20, 1997. Prior to June 19, 1997, the Plaintiff's counsel informed us that the Complaint would be "withdrawn." We advised counsel that F.R.B.P. 7041 required notice to certain interested parties before it could be voluntarily dismissed. A praecipe requesting dismissal was ultimately filed on July 25, 1997. It was unclear what service of this praecipe had been effected.

We wished to bring the matter to possible closure but we also recalled the Wife's earlier correspondence. Further, we were aware of certain authority questioning whether a challenge of a debtor's general discharge could be voluntarily dismissed. Therefore, we entered an Order of August 7, 1997, sent to all listed creditors of the Debtor, scheduling a hearing of August 28, 1997, to consider whether we should act upon the praecipe, stating that we doubted

> whether a proceeding challenging a debtor's discharge can be voluntarily withdrawn or otherwise voluntarily dismissed, particularly without notice to other creditors and a hearing, *see, e.g.*, *In re Levy*, 127 F.2d 62 (3d Cir.1942); *In re Smith*, 207 B.R. 177 (Bankr.N.D.Ind.1997); and *In re Moore*, 50 B.R. 661 (Bankr. E.D.Tenn.1985); *but see In re Chalasani*, 92 F.3d 1300, 1310–13 (2d Cir.1996), ...

The hearing of August 28, 1997, was impaired by two occurrences. First, the Trust-ee failed to appear, except belatedly by counsel unfamiliar with the case. Second, during the hearing we noticed that we had sent our Order of August 7, 1997, to the Wife at the address stated in the Debtor's original Schedules, which referenced his own address rather than her present address. We attempted to obtain some input from the Wife by telephoning the Wife's domestic relations counsel in West Chester, PA. on the record during the hearing, but he was unaware of the hearing and professed unfamiliarity with the pertinent law. We therefore rescheduled the hearing on September 23, 1997.

On the latter date, the Debtor, his counsel, the Trustee, the Plaintiff's counsel, and the Wife *pro se* appeared. The Plaintiff's counsel indicated that his client has reconsidered her intention to withdraw the Casey Proceeding, contending that she now wished to pursue it. The Debtor's counsel responded by arguing that the Casey Proceeding must be dismissed due to the Plaintiff's failure to effect service within 120 days from its filing on April 7, 1997. The Wife expressed a desire to press forward *pro se* with claims of her own. We therefore entered an Order of September 26, 1997, providing as follows:

1. The Wife shall file and serve her proposed Complaint (as a separate proceeding) and the Debtor shall file and serve a brief addressing the issue of whether either the Plaintiff or the Wife can proceed with their Complaints at this time on or before October 10, 1997.

2. Any interested party is accorded the opportunity to respond to the filings on October 10, 1997, or submit any other relevant arguments on or before October 17, 1997.

The Wife submitted a Complaint which was docketed as Adversary No. 97–1060 ("the Wife's Proceeding") on October 9, 1997. Titled as a "COMPLAINT OBJECTING TO DISCHARGE," the Wife's Proceeding included the following averments:

7. The Plaintiff, ..., believes and therefore avers that the [Debtor] conspired, with others, to transfer his assets in advance of the filing of this bankruptcy petition for the purpose of hiding assets

from this Court and his creditors. such [sic] acts constitute fraud.

8. Among those fraudulently made transfers known to the Plaintiff are the following:

a. The Plaintiff [presumably the Debtor] divested the jointly owed [sic] corporation known as Casey Employment Services, Inc. and transferred the assets for little or no value or at a value unknown to Plaintiff to the parties' son, Daniel R. Kasal, thus rendering the corporation worthless.

b. The Plaintiff [again presumably meaning the Debtor] allowed the marital residence to be sold at a sheriff's sale and the residence was purchased by the parties' 22 year old son, Daniel R. Kasal. These actions on the part of Defendant were an effort to harm the Plaintiff as he knew that the Plaintiff lacked the financial resources to maintain the residence on her own.

c. The Defendant conspired with others to empty the joint and business bank accounts in the names of Casey Employment, Inc. and the joint accounts in the names of the parties in an effort to hide the assets in anticipation of filing the above captioned bankruptcy.

d. Defendant diverted monies and property due the jointly owned corporation to Daniel R. Kasal, son of the parties.

e. Defendant diverted jointly owned personal property to Daniel R. Kasal and others to avoid equitable distribution of the property through the divorce court.

f. All of the above actions were done intentionally and deliberately and in an attempt to defraud creditors.

9. It is Plaintiff's belief that the transfer of these assets was in name only and the ownership, use and control remains with the Defendant and therefore was designed to defraud creditors.

10. Plaintiff's claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(6) [quotes these Code sections] . . .

WHEREFORE, Plaintiff, MARGUERITE KASAL, respectfully requests this Court enter an Order denying discharge of the Defendant's bankruptcy case and for such other relief as is just and proper.

The Debtor submitted a brief on October 10, 1997, in which he argued three points: (1) citing the pre-December 1, 1996, version of F.R.B.P. 7004(a), since the Plaintiff had failed to show good cause for her failure to serve the Complaint and Summons within 120 days after the filing of the Complaint, dismissal of the Casey Proceeding was mandatory; (2) the Wife's Proceeding must be dismissed as not timely filed by the known bar date of April 7, 1997; and (3) the Wife should not be permitted to be substituted as the Casey Proceeding plaintiff because she had knowledge of the underlying facts prior to the filing deadline, the Trustee was the only proper substitute party, and the Wife sought to institute a new action, not merely serve as the Plaintiff's substitute. No further submissions were received from any other parties. We denied the Plaintiff's request to remit a late submission.

## C. DISCUSSION

1. *THE CURRENT VERSION OF F.R.B.P. 7004(a) ALLOWS THIS COURT THE DISCRETION TO DIRECT THAT SERVICE BE EFFECTED WITHIN A SPECIFIC TIME IRRESPECTIVE OF THE PLAINTIFF'S GOOD CAUSE FOR FAILURE TO MAKE SERVICE WITHIN 120 DAYS FROM THE FILING OF THE COMPLAINT, WHICH DISCRETION WE WILL EXERCISE IN FAVOR OF ALLOWING THE PLAINTIFF TO PROCEED WITH HER COMPLAINT.*

The Debtor argues that F.R.B.P. 7004(a) and (g) are effective and that they incorporate the 1990 version of F.R.Civ.P. 4(j), which provides, in pertinent part, that, if service is not made within 120 days after the filing of a complaint, "the court, ... shall dismiss the action without prejudice as to that Defendant" if the plaintiff "cannot show good cause why such service was not made within that period,..." *See In re Casey*, 193

B.R. 942, 945 (Bankr.S.D.Cal., 1996); and 1 MOORE'S FEDERAL PRACTICE, § 4 App. 07[1], at 4 App.–33 to 4 App.–34 (3d ed.1997). However, the argument that the 1990 version of F.R.Civ.P. 4(j) remains in effect is inaccurate in light of further amendments to F.R.B.P. 7004 on April 23, 1996, effective December 1, 1996.

■ We have little doubt that, although the Debtor's bankruptcy case filing preceded December 1, 1996, the fact that the Casey Proceeding was filed subsequent to December 1, 1996, renders the recent amendments applicable to the Casey Proceeding. *Cf. In re Sacred Heart Hospital of Norristown,* 181 B.R. 195, 204 (Bankr.E.D.Pa.1995); and *In re After Six. Inc.,* 1995 WL 108209, at *1 (Bankr.E.D.Pa. March 7, 1995) (28 U.S.C. § 157(e) applies to all proceedings filed after its effective date even though the underlying bankruptcy case was filed prior to the effective date of 28 U.S.C. § 157(e)). It makes sense to allow parties to a proceeding to rely upon statutes and rules, at least those relating to service of that proceeding, in effect at the time that the proceeding was filed. *See also page* 928 n. 1 *infra.*

■ The amendments to F.R.B.P. 7004 effective December 1, 1996, provide that F.R.B.P. 7004(g), which expressly preserved the 1990 version of F.R.Civ.P. 4 until further amendments were made to F.R.B.P. 7004, has been abrogated, and they amend F.R.B.P. 7004(a) to render the 1993 amendments to F.R.Civ.P. 4 effective in bankruptcy proceedings. The 1993 amendments to F.R.Civ.P. 4 resulted in the following pertinent wording of F.R.Civ.P. 4(m), which, in pertinent part, replaced F.R.Civ.P. 4(j):

**Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

■ The Third Circuit Court of Appeals ("the Appeals Court") has addressed the final, 1993 version of F.R.Civ.P. 4(m) in *Boley v. Kaymark,* 123 F.3d 756 (3d Cir.1997); and *Petrucelli v. Bohringer & Ratzinger, GMBH,* 46 F.3d 1298, 1304–08 (3d Cir.1995).[1] In *Petrucelli* the court states, *id.* at 1305, that,

as a result of the rule change which led to Rule 4(m), when entertaining a motion to extend time for service, the district court must proceed in the following manner. First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.

The Appeals Court proceeds to add, quoting the 1993 Advisory Committee note, that, among the factors to be considered is that " 'relief may be justified, . . . if the applicable statute of limitations would bar the refiled action, . . .' " *Id.* In *Boley,* the court makes clear that the running of limitations against a new action is a factor favoring allowing the plaintiff to belatedly effect service as opposed to a factor justifying use of the running of limitations as a basis for finding prejudice to the defendant which would justify dismissal of the action. 123 F.3d at 759–60.

The instant Debtor is vigorously arguing that we should dismiss the Casey Proceeding precisely because he anticipates that the effect will be the bar of any action challenging his discharge not only by the Plaintiff but also by the Wife or any other interested party due to the running of the 60-day limitation periods set forth in F.R.B.P. 4004(a) and 4007(c). *Petrucelli* and *Boley* suggest that, in such a situation, courts should exercise their discretion to allow rather than refuse late service.

---

1. We note that the *Petrucelli* court applied the 1993 version of F.R.Civ.P. 4(m) to the case before it, which had been filed in 1991. *Id.* at 1304, 1304–05. This conclusion further supports our holding, at page 928 *supra,* that amended F.R.B.P. 7004 applies to the Casey Proceeding.

Assuming *arguendo* that no good cause for failing to make timely service exists, we find that nevertheless allowing late service is particularly apt here for several reasons. First, as we note in our discussion at pages 929–930 *infra*, it is important to the integrity of the bankruptcy process to require that dismissals of challenges to debtors' discharges be on their merits. The effect of refusing to exercise our discretion in the Plaintiff's favor here would be to foreclose not only the Plaintiff herself from prosecuting with the Casey Proceeding but also any other action from being maintained by the Wife or any other interested party challenging his discharge if the Plaintiff again fails to go forward. Second, certain of the objections to discharge were raised by the Wife in the Letter received by this court in March 1997, prior to the F.R.B.P. 4004(a) and 4007(e) deadlines. It seems unfair to cut off claims which were raised, at least in some manner, prior to the deadlines. *But see* pages 931–933 *infra*. Further, although not formally served with same, the Debtor, by his counsel, has been aware of the claims raised by the Plaintiff since at least the first trial date on May 20, 1997, when counsel appeared at that trial date and a copy of the Casey Proceeding complaint was shared with him. Finally, it would be unjust to not only the Plaintiff and the Wife, but to the integrity of the bankruptcy system, to allow the Debtor to obtain his discharge without resolution of the claims timely raised in the Casey Proceeding on their merits. *See In re Grosse (Royal Bank v. Grosse)*, Bankr.No. 94–18498DWS, Adv. No. 97–1204, slip op. at 8, 1997 WL 668059 (Bankr.E.D.Pa. Oct. 15, 1997).

In order to prevent any recurrence of the apparent casualness and indecision which has marked the Plaintiff's prosecution of the Casey Proceeding to date, we will order that the Plaintiff now must effect service within a short designated time, *e.i.*, by October 29, 1997. If she fails to act by this date, we will accord the Wife, for the reasons set forth at pages 929–931 *infra*, until November 7, 1997, to proceed in the Plaintiff's stead. We also schedule any necessary trial on December 11, 1997. In this way, we will provide the Debtor with ample notice of the time when the trial of his critical right to a general bankruptcy discharge will be heard.

2. *WE WILL PERMIT THE WIFE TO BE SUBSTITUTED AS A PLAINTIFF IN THIS CASEY PROCEEDING IF THE CASEY PLAINTIFF AGAIN FAILS TO PROSECUTE THAT PROCEEDING.*

■ As we indicated in our Order of August 7, 1997, one reason that we refused to simply act on the Plaintiff's praecipe to withdraw the Casey Proceeding was our cognizance of at least three cases, *Levy, supra*, a controlling decision of the Appeals Court; *Smith, supra*; and *Moore, supra*, holding that a challenge to a debtor's discharge may not be compromised or settled. *See also In re Wilson*, 196 B.R. 777 (Bankr.N.D.Ohio 1996); and *In re Vickers*, 176 B.R. 287 (Bankr.N.D.Ga.1994) (trustees' challenges to discharges cannot be compromised by payments to the respective trustees). These decisions appear to be based on the reasoning expressed most graphically in *Levy, supra*, 127 F.2d at 63, as follows:

> Any offer of that character [compromising the creditor's challenge to discharge upon payment of $5,000] is wholly illegal. The reason is plain. Discharge is not personal to the creditors, it is general to the public and particularly that part of it which constitutes the world of commerce. Persons with undesirable business ethics are not to be turned loose to prey on their fellow merchants. This general protection cannot be waived by particular creditors whose private greed outruns their community spirit .... (footnotes omitted).

Another consideration is that other creditors may rely on an outstanding challenge to discharge in refraining to pursue their own challenges to discharge or dischargeability.

> In any event, F.R.B.P. 7041 provides that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Even those courts which have approved dismissals of discharge challenges have usually agreed that the respective trustees or other creditors can, after receipt of a F.R.B.P. 7041 notice, pursue the action in the original plaintiffs' place. *See Grosse, supra,* slip op. at 16–20; *In re Taylor,* 190 B.R. 413, 418 (Bankr. D.Colo.1995); *In re Thomas,* 178 B.R. 852, 853 (Bankr.W.D.Wash.1995);[2] *In re Margolin,* 135 B.R. 671, 673 (Bankr.D.Colo.1992); *In re Joseph,* 121 B.R. 679, 682–83 (Bankr. N.D.N.Y.1990); *In re Nicolosi,* 86 B.R. 882, 888–89 (Bankr.W.D.La.1988); and *In re Short,* 60 B.R. 951, 953 (Bankr.M.D.La.1986). The court in *Chalasani, supra,* 92 F.3d at 1311, cited by the Debtor, questions whether this procedure conflicts with the principle that parties must bring their own discharge challenges within 60 days, but does not resolve any such conflict.

The Debtor argues that the only party who has indicated an intention to step forward if the Plaintiff (again) wanes, *i.e.,* the Wife, should not be able to do so here for several reasons. First, he contends that the Plaintiff must have sought dismissal because of a lack of ability to prove her case, not because of a "side deal" with the Debtor regarding nondischargeability of the plaintiff's particular debt, as was condemned in, *e.g., Levy, supra.*

This argument lacks merit for at least two obvious reasons. One is that the Plaintiff's inability to prove her case has not been admitted by the Plaintiff nor been shown to be the case. Another is that the Plaintiff has now articulated a desire to go forward, suggesting a lack of her having any firm impression that her case lacked merit.

Next, the Debtor suggests that the embittered Wife is a poor substitute for the disinterested Trustee, who refuses to pursue the action due to a perceived inability to locate assets of the estate even if the Proceeding is successful. However, denials of discharges are not always quests to yield assets but are often simply checks on the integrity of the bankruptcy process applicable to all debtors. Grounds for denials of discharges, with the important side effects of discouraging dishonest debtor behavior, may exist in the absence of the availability of assets for a trustee to administer. *See Grosse, supra,* slip op. at 16. For this reason, we cannot allow the Trustee, whose motives for refusing to act may have no relationship to the merits of the action, to be the only potential substitute plaintiff in a proceeding challenging a debtor's discharge. An embittered wife, though driven by retribution, may well be an accurate source of facts which should be grounds for denial of a discharge.

The third argument posited by the Debtor in opposition to the Wife's substitution for the Plaintiff in the Casey Proceeding appears to be that the Wife's Proceeding raises claims and seeks relief not requested in the Casey Proceeding. We find this observation to be correct, and we therefore refuse to allow the Wife's Proceeding to go forward. *See* pages 931–933 *infra.* However, this fact should not preclude the Wife from pursuing the claims asserted in the Casey Proceeding in lieu of the Plaintiff if the Plaintiff refuses to proceed.

■ We agree that, where a discharge-plaintiff receives no consideration for agreeing to a dismissal, and no party wishes to take up the fight, there would seem to be little purpose served by requiring the proceeding to go forward, either by forcing the plaintiff, the case trustee, or the UST into the role of reluctant prosecutor, or by the court moving forward itself as inquisitor. The court can fulfill its own perceived duties to preserve the integrity of the system by invoking 11 U.S.C. § 707(b) if the Debtor lists primarily consumer debts, which may have been the case here, or by invoking 11 U.S.C. § 707(a) in other circumstances. Likewise, if a discharge plaintiff does settle for consideration to which no other creditors or interested parties object, and the court is not offended by disregarding the allegations of the complaint or any aspects of the terms, a settlement resulting in a dismissal should be at least potentially permissible.

---

**2.** The Debtor cites *Thomas* for the principle that *only* the trustee may be substituted as a plaintiff. Although, in that case, the trustee requested and was permitted to replace the original plaintiff creditor, the court favorably cites cases that have "allowed other creditors and/or the trustee to intervene or be substituted for the original complaining creditor...." *Id.*

Here, however, the Plaintiff has most recently expressed her desire to go forward. The Wife can doubtless accomplish her own ends by serving as a witness or, as we shall allow, participating as a party in the Casey Proceeding, who may present her own evidence. Furthermore, if the Plaintiff does not follow through once again, we believe that the Wife should be permitted to proceed in the Plaintiff's stead.

We can easily distinguish the facts of *Chalasani, supra,* where substitution was denied because the party seeking substitution delayed in requesting to do so from the time of dismissal of the timely discharge challenge in September 1993 until February 1994. 92 F.3d at 1305–06, 1313. Hence, we believe that it is consistent with F.R.B.P. 7041, all known authority, and furtherance of the integrity of the bankruptcy system to allow the Wife to be substituted for the Plaintiff if the latter fails again to prosecute the Casey Proceeding.

### 3. THE WIFE WILL NEVERTHELESS NOT BE PERMITTED TO MAINTAIN HER NEW, SEPARATE CLAIMS AGAINST THE DEBTOR.

Although we disagree with the Debtor's arguments that the Casey Proceeding should be dismissed and that the Wife should not be permitted to be substituted for the Casey Proceeding if the latter again fails to timely prosecute that action, we agree with the Debtor's argument that the Wife must, at this juncture, be confined in her claims to those fairly asserted in the Casey Proceeding and may not prosecute any new claims separate from those asserted in the Casey Proceeding. Accordingly, the Wife's Proceeding must be dismissed.

■ We begin by considering the legal effect of the Wife's Letter to the court. The first issue presented is what reaction this court should make to "informal" communications from parties or the general public. There are several possibilities. First, since such a communication does not take the form of a pleading, it could be ignored completely, and not answered at all or answered with a curt form letter stating that such communications to a judge are inappropriate and will

not be read or considered. At the other end of the spectrum, such a communication could be considered as a formal pleading and be forwarded by the court to the clerk's office to be filed as such. *See In re Rand,* 144 B.R. 253, 255–56 (Bankr.S.D.N.Y.1992); and *in re Schwartz & Meyers,* 64 B.R. 948, 955–57 (Bankr.S.D.N.Y.1986). Third, we could answer by a letter explaining the impropriety of the communication and making suggestions to the sender as to how to proceed in the proper fashion.

■ The general practice of this court upon receiving such communications is to proceed as follows. If the sender is represented by counsel, we will usually send copies of the letter to counsel and other interested parties with little comment. Unless it is a complaint against counsel, we will generally advise the sender to consult counsel. However, if the communication contains a complaint against counsel, we may treat it as similar to a pleading, and take action on it directly, such as scheduling a hearing or contacting counsel.

■ The more difficult situation is when the sender does not have counsel. In those situations, it is our practice to either treat the communication itself as a pleading or explain to the sender what must be done to present the issues attempted to be presented to the court in the form of a pleading. We do not consider it appropriate to ignore such communications because we believe that part of our duty is to encourage the flow of information and to demystify the legal process and make it accessible to the general public, including parties exercising their rights to proceed *pro se.* This right should not be confined to the very resourceful or very intelligent who are able to communicate in procedurally appropriate manner.

■ Choosing whether to treat a communication as a pleading itself or not is a judgment call which depends on the nature of the matter at issue and the content and form of the communication. For example, a letter objecting to a fee application or responding to a motion will usually be docketed as a pleading. A letter which declares itself to be

an adversary complaint may be so considered.

Two of our prior decisions addressed treatment of letters to the court from parties, *In re Mayer*, 198 B.R. 116, 119–20 (Bankr. E.D.Pa.1996), *aff'd*, CA. No. 96–6032 (E.D. Pa. April 24, 1997); and *In re Poole*, 177 B.R. 235, 237 (Bankr.E.D.Pa.1995). In *Mayer* the debtor-sender was then represented by counsel in a proceeding before the court. The lengthy letter sent by the debtor to the court was scanned by us, but not read in detail; the sender was admonished; and the existence of the letter and later its contents were shared with opposing counsel. *Id.* at 119–20. Despite the admonition, a subsequent letter firing counsel was directed to the court by the *Mayer* debtor. *Id.* at 120. A motion of the opposing party requesting this court to recuse itself because it may have been improperly influenced by the letter was asserted, *id.*, which raises the spectre of the risks in taking any note of such communications. However, we denied that motion because it seemed inappropriate to allow a party's improper conduct, the contents of which the other party had been made aware, serve as a basis for recusal. Following such a procedure would make it too easy for parties to utilize such communications as judge-shopping devices. We note that, based on her conduct in court, we ultimately concluded that the *Mayer* debtor was mentally ill. *Id.* at 120–23.

*Poole* presented a scenario closer to that at hand. A *pro se* prisoner wrote to us complaining that he was a creditor of the debtor and that the debtor had engaged in conduct which justified revocation of her discharge. *Id.* at 237. We wrote to the creditor and advised him to file a complaint which, in *pro se* fashion, he did. *Id.* at 237. We ultimately allowed the creditor to file his complaint *in forma pauperis* and appointed free counsel who litigated the matter through trial for him. *Id.* at 237–38.[3]

We attempted to respond to the Wife as we had to the *Poole* creditor *i.e.*, by advising her to file a formal complaint. Unfortunately, she read our letter, although it intended to specifically reference filing a formal complaint *pro se* as an alternative means of proceeding, as telling her that she was obliged to hire counsel. Unlike the *Poole* creditor, she never followed up with any document resembling a complaint.

We believe that the Wife's Letter was, unlike the letters to the court at issue in *Rand, supra;* and *Schwartz & Meyers, supra,* very difficult to classify as a complaint itself. The *Schwartz & Meyers* document found to constitute a complaint expressly recited that it was meant to *be* a complaint and not only described facts but cited pertinent Bankruptcy Code sections. 64 B.R. at 955. The *Rand* letter included documentation and described claims based on an earlier state court action. 144 B.R. at 255. Although a more formal complaint was subsequently filed by the *Rand* creditor after the bar date, the letter was deemed to be a timely filing. *Id.* at 255–56.

The Letter in issue does not take the form of a complaint. It was not followed by a timely more formal complaint despite the court's advice to the Wife that she should file same if she wished to press her claims. Instead of taking that form, the Letter appears to merely disclose matters which the Wife requests be investigated by others. As such, the response of this court in forwarding it to the Trustee and the United States Trustee appeared particularly appropriate. *Compare Schwartz & Meyers, supra,* 64 B.R. at 957 (letters of creditors to trustees not deemed to be complaints). These parties, however, declined to take any action.

While admittedly a broad reading of the *Rand* decision could result in our considering the Letter as a complaint, we note that no party, including the Wife, has asked us to do

---

**3.** As it developed the creditor was a former lover of the debtor whose criminal conviction had resulted from an aggravated assault on the debtor. *Id.* at 240. His complaint was that the debtor converted his property after his incarceration. *Id.* at 239–40. We found that particular creditor motivated by retribution, lacking in credibility, and ultimately unable to justify his delay making his claims. *Id.* at 238–42. After his lack of success, the creditor subsequently expressed his "gratitude" to pro bono counsel and the court by filing disciplinary complaints against the attorney and threatening to sue both him and the court.

so. Since we are willing to allow the Wife the partial remedy of a broad right to participate in the trial of the Casey Proceeding; thereby not only allowing her to substitute for the Plaintiff if the latter again fails to proceed, but also allowing her to present evidence of her own in support of the Casey Proceeding's asserted cause of action at trial even if the Plaintiff does proceed, we are unwilling to grant her the further dispensation of treating the Letter in all respects as if it were a timely formal complaint challenging the Debtor's discharge or dischargeability of her debts on the separate grounds invoked therein.

 We now will briefly analyze the substance of the Casey Proceeding and what we believe to be at issue relevant to the Debtor's case as a result of its presence. We find the Complaint to be extremely terse, but not incomprehensible. *See In re Smith,* 46 B.R. 299 (Bankr.D.Me.1985) (poorly-drafted complaint may support claims fairly articulated therein). The Complaint, although possibly referencing claims of nondischargeability, cites only to 11 U.S.C. § 727(a)(4)(A). A complaint which fails to recite facts which could support any other grounds for challenging a debtor's discharge or any causes under 11 U.S.C. § 523(a) challenging dischargeability of the creditor's particular debt will be confined to the grounds specifically recited therein. *Cf. Obermayer, Rebmann, Maxwell & Hippel v. Staffieri,* 1995 WL 339019 (E.D.Pa. June 5, 1995); *In re Ishkhanian,* 210 B.R. 944, 954–56 (Bankr.E.D.Pa. 1997); and *In re Segal,* 195 B.R. 325, 329–32 (Bankr.E.D.Pa.1996) (only grounds for challenges of discharge and nondischargeability which are supported by facts asserted in a timely complaint can be considered, even if motions to amend a timely complaint to add other claims is subsequently presented). Therefore, we hold that only a challenge to the Debtor's discharge based on 11 U.S.C. § 727(a)(4)(A) has been timely prosecuted.

Section 727 (a)(4)(A) of the Code, in relevant part, provides as follows:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; . . .

Section 727(a)(4)(A) has frequently been recognized as the Code section which supports claims that the debtor knowingly and fraudulently made false statements in the Schedules and Statements filed with the bankruptcy court. *See, e.g., In re Main, Inc.,* 213 B.R. 67, 85–86 (Bankr.E.D.Pa.1997); *In re Katz,* 203 B.R. 227, 233–36 (Bankr.E.D.Pa.1996), *aff'd,* C.A. No. 97–550 (E.D.Pa. Sept. 10, 1997); and *In re Freedman,* 1994 WL 455030, at *3–*4 (Bankr.E.D.Pa. August 19, 1994), *aff'd,* 1995 WL 118217 (E.D.Pa. March 9, 1995). *Compare In re Blanchard,* 201 B.R. 108, 121, 127–32 (Bankr.E.D.Pa.1996) (challenges to discrepancies in bankruptcy Schedules and Statement of Financial Affairs are more properly analyzed under § 727(a)(4)(A) than under § 727(a)(2)).

While the Wife's letter and, ultimately, her Complaint, raise other issues, possibly invoking 11 U.S.C. §§ 727(a)(2) and (a)(5), and expressly citing both 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), certain of the claims referenced in the Letter and possibly alluded to in the Wife's Complaint would support a § 727(a)(4)(A) claim as well. For example, the Wife alleges gross misstatements of the value of the parties' antiques and art collection, the undisclosed possession of a late-model automobile of which the Debtor has regular use; and the Debtor's undisclosed expenses (as for the daughter's car) and access to assets.

Furthermore, success on a § 727(a)(4)(A) claim based on the evidence presented by either the Plaintiff or the Wife or by both would completely accomplish the Wife's desired goal of preventing the discharge of obligations owed to her by the Debtor. For this reason, we do not consider the Wife's ability to challenge the Debtor's discharge significantly hamstrung by our rulings. We thus feel justified in not following the procedure of the court in *Rand, supra,* in considering the Wife's Letter as a complaint. *See* page 932 *supra.*