**Ruth K. CASEY, Trustee,**

v.

**Daniel G. KASAL, Debtor.**

**CIV.A. No. 98–1794.**

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1998.

Michael H. Kaliner, Jackson & Sullivan, Fairless Hills, PA, for Debtor.

Daniel G. Kasal, Chadds Ford, PA, Pro se.

Brian Cochran, Chadds Ford, PA, for Ruth K. Casey, Trustee.

Marguerite F. Kasal, Newark, DE, Pro se.

Frederic J. Baker, Assistant U.S. Trustee, Philadelphia, PA, Trustee.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Ruth K. Casey, Trustee, ("plaintiff" or "Trustee") brought an action to deny Chapter 7 debtor Daniel G. Kasal ("Mr. Kasal") a discharge based on "false oaths or accounts" on his bankruptcy schedules. The bankruptcy court allowed the plaintiff and Mrs. Kasal to proceed in an action against Mr. Kasal. *See In re Kasal*, 213 B.R. 922 (Bankr.E.D.Pa. 1997) ("*Kasal I*"). The bankruptcy court then denied Mr. Kasal's discharge. *See In re Kasal*, 217 B.R. 727 (Bankr.E.D.Pa.1998) ("*Kasal II*"). Mr. Kasal appealed both decisions. The decisions of the bankruptcy court will be affirmed.

### FACTS

#### I. *Kasal I*

Mr. Kasal filed a bankruptcy petition on November 14, 1996. On April 7, 1997, the Plaintiff filed a "timely barebones complaint" opposing discharge and invoking only 11 U.S.C. § 727(a)(4)(A). The complaint contained no statement of facts. A summons issued pursuant to this complaint and trial was scheduled on May 20, 1997 and then continued to June 19, 1997.

Before the June 19, 1997 trial date, plaintiff failed to serve the summons; said she was withdrawing the complaint. A hearing was scheduled for August 28, 1997 to give notice of the dismissal to creditors. Neither plaintiff nor Mrs. Kasal appeared, and the hearing was continued to September 23, 1997.

On that date, plaintiff declared she wanted to proceed with the action; Mr. Kasal argued the proceeding should be dismissed for plaintiff's failure to serve the summons within 120 days of filing her complaint on April 7, 1997. The bankruptcy court permitted Mrs. Kasal to file an official complaint. The bankruptcy court later dismissed Mrs. Kasal's complaint but allowed plaintiff to proceed.[1] The only claim raised by plaintiff was under § 727(a)(4)(A).[2]

#### II. *Kasal II*

In 1988, Mr. Kasal and Mrs. Kasal purchased a business, Casey Employment Services, Inc. (the "business") from plaintiff's predecessor. Each own 45% of the business, while their son Daniel (the "son") and daughter Laura (the "daughter") each own 5% of the business.

Mr. Kasal and Mrs. Kasal co-own their marital home in Chadds Ford, Pennsylvania. Upon their separation, Mr. Kasal took control of all the marital assets except a 1988 BMW, which Mrs. Kasal retained.

The bankruptcy court denied Mr. Kasal's bankruptcy discharge because he "knowingly and fraudulently made a false oath or account". The court found he intentionally lied on his bankruptcy statement of financial affairs (the "Schedules") and concealed assets from plaintiff.

In the year before filing for bankruptcy, Mr. Kasal transferred approximately $49,000 and the remaining operations of the business from the business account to the son; he did not include these transfers on his Schedules. Mr. Kasal claimed the transfer was to pay corporate debts, and he deposited the money in the son's account as an intermediate step before paying the business's "real creditors." Mr. Kasal also presented two cashier's checks for $16,000 and $2,000 to the son and the daughter respectively. Mr. Kasal argued he did not need to include the transfer of the funds on the Schedules because he was acting in his capacity as president of the business and not as an individual. The bankruptcy court found the transfer of funds was a fraudulent concealment of assets.

The bankruptcy court found Mr. Kasal drastically undervalued a collection of artwork and antiques (the "artwork") jointly owned with Mrs. Kasal. He valued the artwork at $10,000 on the Schedules. He testified that the dealers from whom he bought the artwork told him they were worth only $10,000, and offered testimony by an auction-

---

**1.** Plaintiff eventually served the summons on October 30, 1997.

**2.** For a complete recitation of the facts in *Kasal I*, see the bankruptcy court's opinion published at 213 B.R. 922.

eer confirming the fair market value of the artwork at $10,000. Mr. Kasal previously valued the artwork at $50,000 on his financial statements prepared a year prior to his bankruptcy filing. The bankruptcy court found Mr. Kasal fraudulently undervalued the artwork.

Mr. Kasal failed to disclose he possessed two automobiles titled to the business, a 1995 Ford Probe and a 1995 Ford Thunderbird. Mr. Kasal argued it was unnecessary to list them because they were officially assets of the business. The bankruptcy court determined Mr. Kasal fraudulently concealed ownership of the automobiles.

Mrs. Kasal claimed and Mr. Kasal denied that he owned a coin collection not included on the Schedules. The bankruptcy court believed Mrs. Kasal and found Mr. Kasal not credible regarding the coin collection.[3]

Finding these omissions to be knowing and fraudulent, the bankruptcy court denied Mr. Kasal's discharge under 11 U.S.C. § 727(a)(4)(A). Mr. Kasal appeals the bankruptcy court's decisions in *Kasal I* and *Kasal II*. He alleges that: 1) the bankruptcy court abused its discretion in denying his motion to dismiss the plaintiff's complaint for lack of service within 120 days of filing; 2) transfer of funds for corporate obligations need not have been included on the Schedules; 3) the bankruptcy court ignored testimony proving Mr. Kasal valued the artwork correctly; 4) the automobiles were titled to the business and Mr. Kasal innocently believed it was unnecessary to list them on the Schedules; and 5) the bankruptcy court abused its discretion in finding Mrs. Kasal more credible than Mr. Kasal regarding the coin collection.

## DISCUSSION

### I. Standard of Review

■ In reviewing a bankruptcy court decision, a district court applies a different standard of review to questions of fact and questions of law. Rule 8013 of the Rules of Bankruptcy Procedure states:

3. For a complete recitation of the facts of *Kasal II*, see the bankruptcy court's opinion published

the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013. The district court "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992).

■ The "clearly erroneous" standard under Bankruptcy Rule 8013 is the same as the standard under Federal Rule of Civil Procedure 52(a). *In re B. Cohen and Sons Caterers, Inc.*, 108 B.R. 482, 484 n. 1. (E.D.Pa.1989). "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the [trial] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

*Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). When a trial judge's finding is "based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent story that is not contradicted by

at 217 B.R. 727.

extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575, 105 S.Ct. 1504.

## II. Dismissal of the Complaint

 Bankruptcy Rule 7004(m) incorporates Rule 4(m) of the Federal Rules of Civil Procedure, providing:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). A court must extend the time if good cause is shown, but if good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service. *See Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1305 (3d Cir.1995). The Federal Rules Advisory Committee has suggested one of the factors to consider in deciding to extend time for service is whether the statute of limitations would bar the refiled action.

In a chapter 7 liquidation case, a complaint objecting to the debtor's discharge under § 727(a) must be filed no more than sixty days following the first date set for the meeting of creditors. *See* Fed.R.Bankr.P. 4004(a). The meeting of the creditors was held on February 6, 1997. If the bankruptcy court had dismissed the complaint on October 21, 1997, the sixty-day statute of limitations would have barred refiling objections to Mr. Kasal's discharge.

In *Petrucelli,* the Court of Appeals reversed a district court dismissal of a complaint for untimely service and remanded for reconsideration because the statute of limitations had run. Since the district court was instructed to decide whether, in light of the running of the statute, an extension should be granted, the appellate court considered the running of the limitations statute alone could be reason to extend time for service. *See Petrucelli,* 46 F.3d at 1306 n. 8.

The bankruptcy court did not abuse its discretion by allowing plaintiff an extension of time to serve her complaint even in the absence of good cause for failure to act sooner.

## III. § 727(a)(4)(A) Standard

 The only claim the bankruptcy court allowed to proceed arose under 11 U.S.C. § 727(a)(4)(A), requiring the court to grant a discharge unless the debtor "knowingly and fraudulently ... made a false oath or account." A plaintiff must prove the debtor: 1) made a false oath or statement; 2) that was knowing and fraudulent; and 3) that was material to the bankruptcy proceeding. *See In re Katz,* 203 B.R. 227, 232 (Bankr.E.D.Pa.1996). A debtor's false statement or omission on Schedules constitutes a false oath or statement under § 727(a)(4)(A). *See In re Hogan,* 193 B.R. 130, 140 (Bankr. N.D.N.Y.1995).

 The statement must be knowingly fraudulent; there must be an intent to hinder, delay or defraud for the actions to have been done knowingly and fraudulently. *See In re Segal,* 195 B.R. 325, 333 (Bankr. E.D.Pa.1996). Fraudulent intent is a question of fact. *See United States v. Tabor Court Realty Corp.,* 803 F.2d 1288, 1304 (3d Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). "Intent is difficult to demonstrate; therefore, circumstantial evidence may be used to establish a pattern of concealment and nondisclosure." *In re Tarle,* 87 B.R. 376, 378 (Bankr.W.D.Pa. 1988). "Mere failure to disclose without more is insufficient to establish the requisite intent." *In re Garcia,* 88 B.R. 695, 705 (Bankr.E.D.Pa.1988).

 A false oath or statement is "material" if it concerns discovery of assets, business transactions, and/or past business dealings of the debtor or the existence or disposition of the debtor's property. *See In re Henderson,* 134 B.R. 147, 160 (Bankr. E.D.Pa.1991). "[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." *In re Coombs,* 193 B.R. 557, 567 (Bankr.S.D.Cal.1996).

 The burden is on plaintiff to prove grounds for denial of discharge by a preponderance of evidence. *See In re Blanchard,* 201 B.R. 108, 114 (Bankr.E.D.Pa. 1996). In any § 727(a) action, the court must construe the section liberally in favor of the debtor. *See Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993).

## IV. Transfer of Funds

 "A presumption of actual fraudulent intent necessary to bar a discharge arises when property ... is transferred to relatives." *In re Butler,* 38 B.R. 884, 888 (Bankr.D.Kan.1984). A transfer of property to relatives "will be subject to close scrutiny, and the relationship of the parties in conjunction with other circumstances will often make the [plaintiff's] case notwithstanding the absence of direct evidence of fraud." *In re Loeber,* 12 B.R. 669, 675 (Bankr.D.N.J.1981).

Mr. Kasal argues the initial transfers of approximately $49,000 to the son and daughter were for paying legitimate corporate debts. Mr. Kasal claims the only reason they were deposited in the son's account was because he could not secure his own bank account because of poor credit history. Mr. Kasal alleged some $10,000 transferred to the son was an "advance payment" for storage of records of the then-defunct business. The bankruptcy court found Mr. Kasal's "storage of records" explanation incredible. It was not clearly erroneous to find fraud based on these transfers from Mr. Kasal to his relatives.

The bankruptcy court also disbelieved Mr. Kasal's assertion that the money paid to the daughter was reimbursement for money paid to the business and for her education. The court found Mr. Kasal lacking in credibility; this court accepts those findings of fact as to Mr. Kasal's intent.

 Mr. Kasal argues that these transfers were not only for legitimate reasons, but he was not obliged to disclose them because he was acting on behalf of the business rather than as an individual. In which capacity Mr. Kasal acted is a question of law, which this court must review *de novo;* the factual findings of the bankruptcy court make clear that "Mr. Kasal was simply utilizing the business as his own vehicle in making disbursements to the son." The testimony credited by the bankruptcy court supports this finding. Mr. Kasal was acting in his individual not business capacity and was obligated to disclose the fraudulent transfers.[4]

## V. Valuation of the Artwork

The bankruptcy court found Mr. Kasal's $10,000 valuation of the artwork fraudulent. The court chose to disbelieve the auctioneer's testimony that the most prudent means to dispose of the artwork would be at one of his own auctions. He chose to believe Mrs. Kasal's testimony of the artwork's value over Mr. Kasal's $10,000 claim. *See In re Cooper,* 22 B.R. 718, 719 (Bankr.E.D.Pa.1982) (an owner of property can always testify regarding its value). In determining the actual value of the artwork, the bankruptcy court found the $50,000 value Mr. Kasal assigned them on his 1995 financial statement was the correct value and demonstrative of Mr. Kasal's opinion of their value.[5] Even though Mr. Kasal presented evidence to the contrary, the bankruptcy court was not clearly erroneous in disbelieving him because he had stated the much greater value on his financial statement just a year earlier.

Mr. Kasal argues that even if the value of the artwork he reported on the Schedules was false, his intent was not fraudulent. He claims he diligently tried to assign the correct value to the artwork by obtaining a quotation from dealers and an auctioneer. The bankruptcy court considered that Mr. Kasal never consulted the auctioneer about the value of the artwork prior to the bankruptcy filing and did not credit his testimony or that presented on his behalf. The bank-

---

4. The bankruptcy court also stated that because these transfers were in reality on behalf of Mr. Kasal as an individual, they must appear somewhere on the Schedules, either under paragraph 3(b), paragraph 7 or paragraph 10. No disclosures appear in either paragraph.

5. Mr. Kasal claimed the artwork was worth $106,000 in a 1988 statement.

ruptcy court's finding of a fraudulent intent was not clearly erroneous.

■ Mr. Kasal also argues that even if he placed a fraudulent value on the artwork, the misrepresentation was not material. The undervaluation of the artwork was material; Mr. Kasal had valued them at least twice before, both when purchasing the business in 1988 and when applying for a loan in 1995. Both of these instances related to past business dealings of Mr. Kasal, so any misrepresentation regarding the artwork was material to the bankruptcy. *See Henderson,* 134 B.R. at 160 (past business dealings material to bankruptcy discharge).

### VI. Exclusion of the Automobiles

Mr. Kasal failed to include two Ford automobiles on his Schedules; these vehicles should have been included. Mr. Kasal does not deny this, but argues that he was holding the cars as president of the business and was innocently under the impression that he did not need to include them on the Schedules.

The bankruptcy court found Mr. Kasal's testimony lacking in credibility, in part because Mr. Kasal was represented by a learned, experienced attorney who would have advised him correctly. The bankruptcy court was not clearly erroneous in determining Mr. Kasal's intent was fraudulent.

■ Mr. Kasal argued that any alleged false oath as to the automobiles was not material because their exclusion from the Schedules did not keep creditors from any of his assets. The exclusion of the automobiles was in fact material because even if the cars were officially titled to the business, their disclosure would have led to inquiry about the operations and assets of the debtor's wholly owned business.

### VII. Ownership of a Coin Collection

The Bankruptcy Court found Mr. Kasal fraudulently concealed his ownership of a coin collection by not listing it on the Schedules; he claims he does not own a coin collection, but Mrs. Kasal claims he does. The bankruptcy court found Mrs. Kasal "far more credible" than Mr. Kasal. There is no basis for finding this credibility determina-

tion clearly erroneous. Ownership of a coin collection was clearly material; a coin collection is an asset for the benefit of creditors and should have been disclosed.

### CONCLUSION

The decisions of the bankruptcy court in *Kasal I* and *Kasal II* will be affirmed; the findings of the bankruptcy court were not clearly erroneous and the court did not abuse its discretion in extending time for service of plaintiff's complaint. The facts warranted denial of discharge under 11 U.S.C. § 727(a)(4)(A).

An appropriate Order follows.

### ORDER

AND NOW, this 13th day of August, 1998, upon consideration of defendant Daniel G. Kasal's appeal of the bankruptcy court's decisions, plaintiff Ruth K. Casey's and Marguerite F. Kasal's responses thereto, and in accordance with the attached Memorandum, it is hereby **ORDERED** that:

1. The bankruptcy court's October 21, 1997 Order extending the time for service of plaintiff's Complaint is **AFFIRMED.**

2. The bankruptcy court's February 20, 1998 Order denying discharge under 11 U.S.C. § 727(a)(4)(A) is **AFFIRMED.**